Judge Luck and Judge Anderson and I are happy to be with you here today in person. Isn't it wonderful? I'm also happy to be here with these two judges and especially today with Judge Anderson. Today is his last regularly scheduled oral argument after 42 years of really noble and dignified and exemplary service on this court. Thankfully he's sticking with us for lots of other ways, but I'm counting on the Chief Judge to pull him in for unexpected oral arguments so that we get to sit with him on this particular bench time and again, but Judge Anderson, thank you for your leadership and example to all of us on this court. We all strive to live up to the example that you've been setting for 42 years. I've told a lot of people this is the best job God ever thought of. I can't disagree with that. Well we are ready to get started with our first case of this morning, United States v. Cobble, Mr. Fletchson. I hope I pronounced that right. Excuse me, Judge, what did you say? I'm sorry, I hope I pronounced that right. Oh, you got it just perfect. It's like Michelle Pfeiffer or Price Vister Fawcett. If it please the court, what is it that I'm going to come here today and tell you about how this trial judge was supposed to handle Mr. Cobble? What, you know, how do you, how does the system handle somebody like this? The trial judge here had a nearly impossible task. He had to balance the right to be represented by counsel and the right to represent yourself. Now, you have my brief and the basic application of the elements of the cash case and so forth. Do you agree the standard we, and I understand the cash case is the best one and that you think most fits, but do you think ultimately our review has to be done under either the Fitzpatrick factors or, I know there's other cases that have applied them and we've called them something else, but those seven or eight factors that we look at, including mental illness and other things that you've pointed us to? Yes. Okay. So tell me, maybe going through those factors, which ones do you think weigh most in favor of us reversing the determination by the trial court judge that the waiver of counsel here and the right to self-represent was knowing, voluntary, and intelligently made? Well, basically virtually all of the factors. I believe I outlined those factors in my brief, if I could. Education and background. Well, let's talk about that. So we'll use the first one. So age, he was 40. In other words, this isn't a young man. This is someone who has at least developed maturity. Education, he had had a high school equivalency exam and even bragged, as I understand in the record, about how well he had done in both middle school and high school. Is that true? Is that the record? True. Okay. And his physical health, there was no indication of his physical health. Regarding his mental health, he clearly had some sort of mental deficits, but in terms of the capacity to be able to self-represent, there doesn't seem to be any indication in the psychological record that whatever psychological illness he had prevented him from knowingly, voluntarily, and intelligently waiving his right to counsel. Is that correct? I would say that his personality was one where he could have voluntarily waived the right to counsel, but he didn't because the colloquy was insufficient. Didn't the district court? Well, I mean, we have lots of cases which say that we don't really judge the FARETA. We judge the ultimate determination of whether he understood or not based on the whole record. Do you agree that that's our case? Yes. In other words, this is actually different. In Florida State Court, if you sort of miss a step in FARETA, it's almost per se reversible. That's not our case law. Our case law says we look at the whole thing holistically, and it's really great if you do a great FARETA inquiry, but we also look at some other stuff too. Is that a fair representation? Yeah, I agree with that. So true. Okay. Even so, tell us what you think should have been said in the colloquy that wasn't said very specifically. Thank you very much for that question. He should have been strongly admonished on the dangers of self-representation, and he wasn't. If you look at the transcript, what you will find is the judge informed him of the advantages of representation. If you have a lawyer, people are knowledgeable with the law and et cetera. However, the judge did not make clear to him the pitfalls of self-representation. That is specifically the problem with the colloquy. What pitfall did he—that was he not aware of that ultimately affected the outcome of this case? That his self-representation would likely result in a conviction. That the jury would likely—his representation would— Could the court really say that? So a judge has to tell a defendant—I just want to clarify to piggyback off of what Judge Grant asked. A judge has to tell a defendant, if you represent yourself, you are likely going to be convicted? Well, maybe I overstated that. But the pitfalls—he should have done a better job of explaining to him—he should have put it like this. It would be against your interest if you didn't have an attorney. Didn't he pretty much say that? I don't believe so, Judge. I haven't had a chance to reread the whole transcript real recently, but— Isn't that the direct implication? I think what Judge Grant is asking, and I had the same question, and I don't want to speak for her, but isn't that the implication of exactly what he did ask? In other words, what he said is, if you have an attorney, they're going to be able to talk to witnesses, and they're going to be able to know the law, and they're going to be able to make evidentiary objections. He went through all of that. Isn't the flip side of that the implication of you don't or aren't going to be able to do those things? Well, I agree it's an implication that the defendant didn't understand. I think that—the cases say that the defendant has to be advised of the pitfalls of self— and there are pitfalls of self-representation. So I want to get back to where I was, because you're right that certainly what our case law says is a good Ferretta inquiry would include that, among other things. But the ultimate decision is the application, as I understand it, of the Fitzpatrick factors. So I guess what I want to know is the failure to do what you're saying here, saying you're going to have all these pitfalls, how does that affect the factors? So we talked about mental illness. That really wouldn't affect the mental illness part of it. He is mentally ill, but as I understand it, the district court found, based on the persuasive evidence of the government psychologist, that he had a full understanding of the nature and consequences of the proceedings. And, in fact, the district court found that he was more educated than most other defendants than he had—than the district judge had before him, correct? Yes, educated in a sense, I would suppose, yes. He had a lot of experience with the criminal defense system. That, we've said, actually weighs in favor of the defendant waiving his rights under the Fitzpatrick factors, correct? It could. Factor 8, this is page 23 of my brief, the last element of the Fitzpatrick test for the evaluation of defendant knowing waiver of counsel with knowledge of the dangers focused on the defendant's effort to manipulate the trial. So let me ask you about that. Because Dr. Warren Phillips testified that the defendant said to— I can't remember if it was a her or him, so I apologize on the pronouns— but said to the doctor, hey, if you find me incompetent, the charges are going to get dropped against me. And, by the way, he's exactly right about that. You know that. If you're incompetent for long enough, at some point they have to drop the charges. So is that not evidence of manipulating this process? Actually, that's what I was just ruminating on before I stood up, is the court has to be very concerned about manipulation. Could it be that Mr. Cobble, in all of his knowledge of the law, purposely did this to get this reversed? Could he have done that? So what would have been the best way to prevent manipulation? My position is that the best way to prevent manipulation would be for the court to have strictly followed cash and make sure that he knew of the pitfalls. To make this way, Mr. Cobble's maneuverings would not have been upheld, you see. So I think that the trial judge could have been better at preventing manipulation by strictly following the cash case and advising him of the pitfalls. Is that really better at avoiding manipulation or better at checking off a list of things? Well, I think the best way to avoid manipulation is to check off a list. In other words, to make sure that the law is applied correctly, it's airtight, so that the conviction will be upheld. That's the best way to prevent manipulation. I guess the only problem is that, as Judge Luck has said, we apply the factors from the Fitzpatrick test rather than a set script that each judge is expected to read. And so maybe it would be simpler if there were just a monologue. I don't know that that would be really as effective in making sure that every defendant understood the pitfalls. That would be a different system than the one we've implemented, though. Yeah, I cited a case. The correct thing to do here would have been to do a monologue because the defendant— Which is just about what he did. I mean, he covered voir dire, he covered opening statement, calling the government, calling witnesses, his ability to cross-examine. And he, instead of the trained lawyer, will be cross-examining. And then decision of what witnesses he calls, talked about the district judge, talked about whether or not he would have to make the decision whether or not to testify, talked about the insanity defense and closing arguments and the instructions. It seems to me he covered it about all. My recollection of the transcript, Judge, is that it wasn't— it was the judge asked questions. It was sort of a mix of questions and monologue. As the case I cited in there states, if you have an absolutely obstinate defendant, the proper thing is to do a thorough and complete monologue, including the pitfalls, which was not done here. And I'm expired for now. Thank you. Mr. Talley? Your Honors, may it please the Court, Brett Talley for the United States. I'd start by saying I agree with my friend on a very important point. The judge here was faced with the important task of balancing two rights. The right to have a counsel represent you, but also the right to represent yourself. And the right to represent yourself is not lost just because you have a mental illness, to whatever extent Mr. Cobble was suffering from a mental illness. It does impact the analysis, though, you agree? It 100% impacts the analysis. It's part of the analysis. It's part of the first factor. And I think what you would see, if you had someone who was truly mentally ill to the point that they could not represent themselves, you would see a cascade effect. You would see that person have a mental illness, and you'd see that because of that, they couldn't understand the procedures. They couldn't understand the defenses. They couldn't understand how to question attorneys. You would see all those other factors affected by that. And I think in this case, you see the exact opposite. You see someone who has some issues, and I think there was testimony to that effect. But you also see someone who has a deep understanding of the way the judicial system works and what will be expected of him if he represents himself. And to your point, Judge Luck, that understanding can come from many different places. It can come from a colloquy. It can come from a monologue. It can come from discussions with lawyers, prior experience. It can come from discussions with psychiatrists. How should we look at his dozens and dozens of filings? Is that evidence that he understands and works within the legal system, or evidence that he doesn't understand how to get a result in the legal system at all? I think it shows that he understands the legal system, but he has views on the legal system which are inaccurate. I think Mr. Cobble can be described as a sovereign citizen. In Dr. Tennille Warren Phillips' report, she actually says he has a lot of views that are consistent with sovereign citizens, and you see that in those filings. Didn't he testify that he didn't actually believe those things, but he was saying them to get a particular result? What result? I'm not sure. It is clear that Mr. Cobble is interested in manipulating the system, but it's a manipulation that comes from an understanding of how the system works. I think what you see with him— I think what your opposing counsel is trying to get at is his understanding is fundamentally wrong because of his mental illness. In other words, he definitely has an understanding of how it works, but that understanding is completely inconsistent with anything that would give him any sort of viable way to represent himself. His understanding of viable defenses was completely wrong. His understanding of what counsel did, in fact— I understand he said in theory it worked this way, but in fact was completely wrong. And at some point, is that understanding so affected by mental illness that it renders someone under Edwards that they're not competent to be able to waive? Well, let me say two things about that. Number one, on Edwards. I don't think Edwards establishes a separate competency test. I think what it does is it allows a district court judge a little bit more leeway than they would normally have under Ferretta. Where Ferretta, as you know, is de novo review, a mixed question of law and fact, whereas competency is clear error. I think it gives the judge a little bit more flexibility there in a truly gray area case to say you're competent, but you're going to have a lawyer. And I think Edwards even speaks in terms of that. The Constitution allows you to do this. It's the shield, not a sword. That would be the first thing. The second point, I think if someone was truly delusional, then yes. But I think that would affect everything else on the test. And I want to go to the defenses. One of the defenses Mr. Conville says repeatedly is that he didn't mail the letter. He didn't cause the letter to be mailed. In fact, he corrects—oh, excuse me, Judge Anderson. I think the best answer you could give to Judge Luck's question is that the psychiatrists and psychologists examined that very question. The district court made findings of fact in that regard. And in my judgment, Dr. Panutu, if that's how you pronounce it, P-U-N-N-U-T-O, who observed him for six months, had daily interactions with him, her testimony was the most persuasive to me that he did understand the nature of the charges and the penalties and the defenses, and he discussed defenses with her. What she said is she observed this both verbally and in examining some of his writings where he even wrote about certain defenses and so forth. I think that's your best answer to Judge Luck's question. There are findings of fact in that regard that are not clearly erroneous. And Judge Luck, I would like to adopt Judge Anderson's answer there. And it's 100% correct. And I think Judge Anderson gets to the heart of this, which is whatever the standard, it's all based on the record. It's all based on the facts. And I think if you look at this record, you look at Dr. Panuto, you look at Dr. Warren Phillips, what you're going to see is repeatedly statements that this is someone who does understand the law. There was contrary evidence, but the district court made findings of fact. Correct. Absolutely. It would be helpful for me if you went through the Fitzpatrick factors. Of course. I mean, Judge Grant is absolutely correct. This isn't a grading exercise on a judge's meeting the check marks of Feretta. This is an ultimate determination of whether someone had the ability to and intelligently and knowingly waive their right to counsel. And I'm happy to do that. The first factor, as you mentioned, defendant's age. He is in his 40s. He's not so old that you would think that he wouldn't be able to represent himself. He's not so young that he lacks the experience necessary. His educational background, as you said, GED out of high school. He says he got good grades. Apparently he did with him. You know, who knows. Mental health, obviously we've talked about that a lot. I think there's a good argument. It actually is a factor in favor of him representing himself based on what Dr. Panuto testified to in her report. I'm going to take you out of order to make sure we get to this one. I see a lot of evidence that he understood the nature of the charges. Where's the evidence that he understood the potential penalties? So, Your Honor, there's a couple places I can point to on that. Number one, in the record, page 587. This is during the hearing. At page 76, Judge Land actually says that the maximum penalty on each count is going to be ten years. Also in… Did he say it or did he wonder it? Right? I looked at that page last night, I think, and he said, what is the penalty, ten years? And I think someone said, yes, I think so. I don't have the page up right now. Do you think that's enough? Well, I know this has been an issue in cases recently in this court. There's a couple things I would say on that. Number one, Mr. Cobble certainly would have had an arraignment where he would have been told the maximum penalties. It was stated in the court, and you have testimony from Dr. Panuto, and I'm looking for the exact site, who says that, in fact, if you look at Dr. Warren Phillips' report, document 62 and 11, he or she, again, I don't remember the gender, the doctor said that the defendant understands the nature and consequences of the proceedings, correct? And I believe she also says the possible punishments that he faces. And I think it's a she, but I could be wrong. And I believe Dr. Panuto, in her testimony, says a similar thing about him understanding the consequences of the charge against him. So I would say yes, that given all of that, he was aware of the penalties that he was facing. Can I go back to the first factor, the mental health one? Of course. I mean, Judge Anderson, of course, is exactly right, but the doctors testified he had serious mental illness. I mean, there's no question that he was mentally ill. That's a separate issue from whether one is competent to proceed, but he had what would be diagnosable mental health issues by all doctors, correct? Correct. I think Dr. Panuto and Dr. Warren Phillips were a little less. I mean, they say he never was incompetent. They say he certainly has some mental issues. They don't go as far as the defense expert who says he has, I think, a narcissistic personality disorder. That would be something, though, we would weigh in favor of the defendant. That is something to weigh in favor of the defendant. It's something the district court absolutely considered. If you look at the very beginning of that hearing, back when they initially talked about competency, the judge says, I want to hear evidence about his competency, both to assist his attorney and to represent himself. What about knowledge of possible defenses? So back to the same factor that Judge Grant asked you about. So on possible defenses, and I was mentioning this earlier, one of the things that he raises both here and in the trial is he analyzes the statute and realizes there's an element that's possibly in his favor, and that's that he has to cause something to be mailed to the United States Mail. And one of the points he makes is, I told him to send it through FedEx. Is that going to be effective? Probably not in front of a court or in front of a jury. But he recognizes that as a potential weakness of the government's case, that you have to show that I caused this to be mailed through the post office. And, in fact, the government, the first person we put on, was someone who testified that in the jail, they mailed them through the post office, and the inmates would have known that. So it's not a defense that ended up working, but he recognized that by looking at the elements of the crime, he could pick one and attack it. So I think that does show that he is able to create a defense. You agree, though. That would be looking at the entire record. You agree, at least in the Frederick inquiry, there was no discussion of possible defenses. Well, he raised, in a way there was, he raised that very defense, because when the judge mentions the charge against him. He corrected the judge on the nature of the charges. Correct. But he didn't say, the judge didn't ask, and he didn't say, I understand that that's a potential defense in this case. I don't think there was ever anything that explicit, no. With regard to the rules of evidence, procedure, and decorum, the defendant, at least in one incident, had some in decorum procedure or in decorum conduct, at least at the end of one particular day of trial, correct? Yes. And, you know, to return to what exactly we're considering, he had some of those in the actual hearing itself, where they were determining whether or not he was competent to represent himself. He had to be removed. Well, that was in an earlier hearing where he had to be removed. In this hearing, I mean, he very much did not like his attorney, and he made that very clear at various times. And it is certainly the case that he is an obstreperous defendant, and that is a factor that weighs against him, but is only one. Is there any evidence that standby counsel, and this is looking to what I count as the sixth factor, we haven't always been consistent in how we've identified them, but what I'm calling the sixth factor, whether he aided the defendant during the trial? Certainly standby counsel was appointed, but did he aid the defendant? He was appointed. I do not believe he aided the defendant. I don't think the defendant wanted his aid. The defendant made clear that his big concern was Voight-Dyer. He didn't know if he was necessarily going to know how to do that, and the judge spent about a page of the transcript explaining to him how Voight-Dyer would work. He did tell him that Mr. Girard would be his standby counsel, and the defendant said, as long as he doesn't sit at my table, that's fine. So that was sort of his position, but he never used him. The standby counsel actually represented him full force in almost all of the pretrial proceedings, though. That is correct, and one way in which he did continue to represent him is because of the many filings, which was mentioned earlier. Judge Land put in an order that he would review the filings to see which ones were potentially meritorious, and that those filings would be filed with the court, and I believe that actually went up on appeal to this court, and that order was sustained, and that did happen. So he did continue to assist him in that way. I think at the end of the day, I think this is a very record-heavy case. We spent a lot of time on the record. I would urge the court to read that transcript, and I think what you'll see is a judge who's working with a very difficult defendant to try to make sure that that defendant understands what he's doing and why he's doing it, and this is a knowing and voluntary waiver, and we would ask that Mr. Cobble's decision to represent himself be honored and his appeal be denied. If you don't have any other questions, I will yield back my time. Thank you. Thank you, Your Honor. Mr. Flipson, you have your rebuttal time. I have two basic points. I'm going to go back to the Fitzpatrick. First of all, actually I forgot my first one, so I'll move on to the Fitzpatrick. Oh, I know what I was going to say. With all due respect to everyone, we've spent a lot of time here talking about whether he understood the charges against him, whether he understood the nature of the proceedings. That's not the issue. The standard for competency to stand trial is different than representing yourself. I'm not sure that's 100% correct. Tell me where you get that proposition from. I cite a case to the Supreme Court. I've got that in my brief. Well, let me read to you what I think the Supreme Court has said on the topic, and this is from Godinez v. Moran at 399 of that decision. If the DUSCIE standard, and DUSCIE standard is the competency standard, as we all know, is adequate for defendants who plead not guilty, it is necessarily adequate for those who plead guilty, nor do we think, and this is the relevant language, nor do we think that a defendant who waives his right to the assistance of counsel must be more competent than a defendant who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights. That seems to suggest that the standard is the same. Your opposing counsel seems to be correct in his reading of Edwards in that, yes, there is wiggle room for a district judge in extreme cases to force counsel on someone where they understand the charges but are completely delusional as to everything else and can't function after applying the Fitzpatrick factors. But at least with regard to the constitutional standard, they seem to be the same. Tell me if I'm reading that wrong or if there's something else. I've got a site here, and this actually is from Indiana versus Edwards. Right, the case we've been talking about. Right. I can't say I stated the holding in that case, but I found a quote in there that given the different capacities needed to proceed to trial without counsel, the baseline level of competency alone is insufficient to demonstrate a defendant's competence to represent himself given the capacities needed to proceed to trial. I don't disagree with that, and I don't think that we've been suggesting that. It sounds like we've been talking about that baseline of competency plus the other factors that we've developed as a court in Fitzpatrick and following cases. What do you think we're missing based on the fuller discussion? All right, so addressing, stepping back and looking at all the Fitzpatrick factors. Please remember, in this particular criminal proceeding, he was declared incompetent to stand trial earlier. He was declared incompetent to stand trial. But you agree there's not a per se rule that if you're ever declared incompetent to stand trial, once you are declared competent, you can't represent yourself, right? That's really never been the case. I'm not suggesting a per se rule. I am suggesting looking at the whole picture. If we're looking at the whole picture, though, there are findings of incompetency, and then there's what happened here. As I understand what happened here, they have hearing number one, government expert testifies he is competent. Defense expert testifies he's not. Defendant goes crazy, has to be removed from the proceedings, ultimately comes and gives some testimony. And after that, the government and the defense stipulate that he is not competent currently and that they wish to send him to Butner. He goes to Butner and then they have the full hearing. So it's not as if the district court made a determination after all of this happened. The district court merely accepted the stipulation of the parties in making that initial determination, correct? Yeah, that is correct. That seems to be a lot less relevant on the scale of incompetence than if there had been a full-blown hearing like there was the second time and there was a finding of incompetence, and then he was restored to competency, which isn't unusual, and then a determination was made. You would agree? Yeah, I would agree. But, again, I would suggest that these Fitzpatrick factors are broad. They look at the history of the individual, their mental history, their social history, everything. And also you mentioned that there was a defense witness as well. That was a psychiatrist. And I'm able to make one more point if I can lay my hands on it. Even the government psychologist pointed out that the defendant believes he is smarter than his attorneys, documents 62, page 8 through 9. So I would encourage the court to look at all the factors. Thank you. Thank you. And thank you, Mr. Flipson. I understand that you're a CJA-appointed attorney, so we appreciate your service to your client and to this court. It was a labor of love.